FILED

## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

2012 JUN 12 PM 2: 28

CLERK... OF COURT
...DISTRICT OF FLORIDA
ORLANDO,FLORIDA

MELISSA DEOLMOS,

    **Plaintiff,**

v.                                                Case No.: 6:12 CV887-ORL-18 KRS

ROBERT JAMES AND ASSOCIATES, INC.,

    **Defendant.**

_____/

### VERIFIED COMPLAINT AND DEMAND FOR JURY TRIAL

1.    Plaintiff alleges violation of the Fair Debt Collection Practices Act ("FDCPA"), 15
U.S.C. § 1692, *et seq.*, and of the Florida Consumer Collection Practices Act ("FCCPA"),
Fla. Stat. § 559.55, *et seq.*.

### JURISDICTION AND VENUE

2.    This action meets the jurisdictional requirements of 15 U.S.C. § 1692k (d), 28 U.S.C. §
1331, and 28 U.S.C. § 1367.

3.    Venue is proper under 28 U.S.C. §1391(b)(2) because the Plaintiff resides within Brevard
County, Florida and the Defendant placed its debt collection telephone calls to the
Plaintiff within Brevard County, Florida, thus giving rise to this claim.

### PARTIES

4.    Plaintiff, MELISSA DEOLMOS ("Ms. DEOLMOS or Plaintiff"), is a natural person and
a citizen of the State of Florida, residing within Brevard County, Florida.

1

5.      Plaintiff is a "consumer" as defined by 15 U.S.C. § 1692a(3) and Fla. Stat. § 559.55 (2).

6.      Defendant, ROBERT JAMES AND ASSOCIATES, INC. ("RJA or Defendant"), is a corporation listed with the New York State Department of State Division of Corporations with its principal executive office located at 461 Ellicott Street, Buffalo, NY 14203.

7.      Defendant is listed with the Florida Office of Financial Regulation as a debt collector which was issued license number CCA9902465.

8.      Defendant regularly uses the mail and telephone in a business whose principal purpose is to collect or attempt to collect debts of others.

9.      Defendant regularly attempts to collect and collects debts for parties other than the original creditor.

10.      Defendant is a "debt collector" as defined under 15 U.S.C. § 1692a (6) and Fla. Stat. § 559.55(6).

11.      Defendant was acting as a debt collector under both Federal and Florida State law regarding the attempted collection of the Plaintiff's alleged debt.

12.      As a pattern and practice, Defendant regularly engages in violations of law in collecting debts in order to coerce payments from debtors.[1]

---

[1]      Defendant regularly engaged in alleged FDCPA violations by providing false time lines in which to make payment arrangements, false threats, etc., against Plaintiffs who later sued the Defendant. (available at www.pacer.gov. *Ferrini v. Robert James & Associates, Inc.,* No. 1:11-cv-00709-RJA, document 1, pp. 2-3 (W.D. NY August 24, 2011)(message left on alleged debtor's neighbor's phone answering machine to call RJA due to a pending civil case filed. Defendant left multiple calls with neighbor without consent of debtor); *O'Neal v. Robert James & Associates Asset Management, Inc.* No. 4:11-cv-00396-RP-CFB, document 1, pp. 2, 3 (S.D. IA August 30, 2011)(debtor had 24 hours to make payment arrangements or a summons would be served at her

## FACTUAL ALLEGATIONS

13.   Plaintiff repeats, re-alleges paragraphs one (1) through twelve (12) as if fully stated

herein.

14.   Ms. DEOLMOS has continuously resided at her current address within Melbourne,

Florida since June 2011.

15.   Ms. DEOLMOS has not lived with her parents, Rafael DeOlmos (Mr. DeOlmos or

father"), and Rosanna DeOlmos ("Ms. DeOlmos or mother"), since about 2007.

16.   Plaintiff, a natural person, originally obtained a payday loan from Plain Green Loans in

---

place of employment. Defendant repeatedly called employer to contact plaintiff. No verification
or dispute notice received from defendant); *Stieferman v. Robert James & Associates et al.,* No.
2:11-cv-04263-NKL, document 1, pp. 3-6, 7-9 (W.D. MO October 4, 2011)(voice mail stating
that the defendant was calling the plaintiff regarding a legal matter and provided a case number
even though no lawsuit filed. Plaintiff requested validation but no validation provided.
Defendant communicated with third party without consent. Defendant sent fax to employer
requesting verification of employment suggesting defendant was going to garnish wages); *Dees
v. Robert James & Associates,* No. 2:11-cv-02310-DKD, document 1, pp. 3-4 (AZ November 22,
2011)(voice mail claiming legal case needing statement from plaintiff on actual case when no
case existed); *Arthur v. Robert James &Associates,* No. 3:11-cv-00460-TSB, document 1, pp. 3
(S.D. OH December 29, 2011)(voice mail message from defendant stating that plaintiff set up
settlement offer and stating payment declined giving case number. Did not tell plaintiff call was
from debt collector); *Parrish v. Robert James & Associates, et al.,* No. 4:12-cv-00731, document
1, pp. 3 (S.D. TX March 8, 2012)(voice mail regarding legal matter for plaintiff with possible
wage garnishment with legal documents needing to be delivered and case number. Also failing
to identify defendant self as debt collector in those voice mails); *Lee v. Robert James &
Associates,* No. 4:12-cv-00548-CEJ, document 1, pp. 4-5, 7-8, 10 (E.D. MO March 23,
2012)(defendant left voice mail stating that plaintiff had defrauded bank and would be facing
serious charges for that bank fraud. No judgment against plaintiff however defendant threatened
garnishment of bank account and if debt not paid by end of day, lawsuit would be served and
indicating lawsuit had been filed); *Howard v. Robert James & Associates, Inc.,* No. 4:12-cv-
00252-CKJ, document 1, pp. 3-4 (AZ April 6, 2012)(voice mail left by defendant stating that a
claim had been filed with a file number and that documentation indicates that plaintiff has short
time to provide decision. Defendant failed to state that this communication was from a debt
collector).

or about June 2011, to use for personal, family or household purposes in order to help her move from one residence to another.

17. Plaintiff is a single parent with two (2) small children.

18. Plaintiff went in default on this payday loan and it was sold to third party debt collector, National Credit Adjusters, LLC, 327 W. 4th, Hutchinson, KS 67501, on or about February 20, 2012.

19. It is unknown exactly how or when Defendant came to acquire the rights to collect on this account but it began collection activity on or about May 21, 2012.

20. The Defendant, a debt collector as defined by 15 U.S.C. § 1692a (6) and Fla. Stat. § 559.55 (6) and whose principal business is the collection of debts owed or allegedly owed to another, can only act through its authorized agents, employees, officers, members, directors, assigns, principals, or other representatives.

21. The Plaintiff never gave consent to RJA or Plain Green Loans to contact any third party regarding her alleged debt.

22. On May 21, 2012, approximately 6:30 p.m., a very frightened Ms. DeOlmos came over to the Plaintiff's apartment. Ms. DeOlmos told her daughter, the Plaintiff, that her father had received a call from a collection agency. At first, this unidentified agent of the Defendant asked for Ms. DeOlmos, the Plaintiff's mother. When the agent found out that Ms. DeOlmos was not available, then asked for location information regarding the Plaintiff. Defendant's unnamed agent, knowing that the following statement would cause grave concern to any caring parent, told Plaintiff's father that the Plaintiff would be going

4

to jail for writing a bad check.

23.    Mr. DeOlmos became extremely ill and terrified that a debt collection agency had called for his daughter and told him that the Plaintiff would be going to jail for writing a bad check.

24.    Defendant's agent left the phone number 315-410-2060 with the father to give to the Plaintiff to call.

25.    Ms. DeOlmos and the Plaintiff engaged in an argument over the Plaintiff's financial condition and the mother left crying. This argument over her financial condition upset the Plaintiff as well.

26.    While upset and curious, the Plaintiff called the number given to her by her mother not knowing who she was calling. After calling 315-410-2060, the Plaintiff reached an answering machine which did not state the name of the company or that it was a debt collector. This answering machine stated to the effect that, "Michael Ryman can not come to the phone, leave a message." Ms. DEOLMOS left a message stating her name, phone number and stated that they were not to call her parents for any reason but only to communicate with her.

27.    Shortly after leaving this message, Ms. DEOLMOS' fiancé came home and the Plaintiff ended up emotionally distraught and crying about, among other things, the fact that the Defendant called her parents and told the father that Ms. DEOLMOS, his daughter, would be going to jail for writing a bad check.

28.    The Plaintiff was not aware of writing any check that had been dishonored.

5

29.  On or about May 22, 2012, at approximately 11:03 a.m., Michael Ryman ("Mr. Ryman"),

called the Plaintiff for the first time and in his initial communication to her left on her

voice mail stated,

> Uh, this message is for Melissa Deolmos, this is Michael Ryman.
> I received your voice mail. I need you to contact me back as soon
> as you receive this message.  My direct line is 315-410-2060.
> Again, it's 315-410-2060.

30.  The Plaintiff called back and left a message with her first and last name and cell phone

number on Mr. Ryman's answering machine.

31.  On or about May 22, 2012, at approximately 11:38 a.m., the Plaintiff again called 315-

410-2060 number back and again obtained the answering machine.  The message stated

to the effect, "You have reached the desk of Michael Ryman. I may be on another call.

Please leave a message with your name and case number. I will return the [call] as soon

as I get it."

32.  On or about May 22, 2012 approximately 11:41 a.m., Mr. Ryman again called leaving the

following message on Ms. DEOLMOS' voice mail,

> Michael Ryman, just, uh, missed your call again. Uh, give me a
> call as soon as you get this. 315-410-2060.

33.  Ms. DEOLMOS had no idea of the name of the company which she was calling because

the answering machine did not provide that information nor the fact that the company was

a debt collector.

34.  Ms. DEOLMOS, not having any idea of what her "case number" was, again left her first

and last name and cell phone number.

35.   Approximately one half hour later, Mr. Ryman returned the Plaintiff's call and introduced himself as Mr. Ryman, an Arbitration Manager.  While not knowing exactly what an "Arbitration Manager" was, Ms. DEOLMOS believed that Arbitration had something to do with the legal system. This meant to Ms. DEOLMOS that she was in trouble because she believed that Mr. Ryman could compel payment of the alleged debt.

36.   During this conversation, Mr. Ryman did not tell the Plaintiff the name of the company he was working for.  Additionally, Mr. Ryman did not tell Ms. DEOLMOS during this first initial communication with her, "that the debt collector is attempting to collect a debt and that any information obtained will be used for that purpose. . ." or even any variation thereof.  See 15 U.S.C. § 1692e (11).  Additionally, Mr. Ryman did not tell MS. DEOLMOS that she had thirty days in which to dispute the validity of this debt or any portion thereof and if not disputed, that the debt would be assumed valid. Mr. Ryman did not tell Ms. DEOLMOS that if she notified the debt collector in writing within this thirty-day period that the debt or portion thereof was disputed, that the debt collector would obtain verification of the debt and mail it to her. Mr. Ryman did not tell Ms. DEOLMOS that upon her written request within thirty-days that it would provide her with the name and address of the original creditor, if it was different from the current creditor. See 15 U.S.C. 1692g (a)(3)(4)(5).

37.   Mr. Ryman told Ms. DEOLMOS that the reason for his call regarded an alleged payday loan debt from Plain Green Loans and he stated that she had written a bad check on this account. Ms. DEOLMOS knew nothing about writing a bad check to Plain Green Loans.

7

Mr. Ryman continued by asking if she had been served with legal papers requiring her appearance in Brevard County Court to answer this allegation. This emotionally upset the Plaintiff.

38.     The Plaintiff had not been served with legal process and she told Mr. Ryman that she had not been served. Mr. Ryman told her that she had two (2) options, 1. to make payment arraignment today or 2. To be served with legal process papers.

39.     Ms. DEOLMOS told Mr. Ryman that she did not want any trouble and did not want to go to court and asked him what her options were. Mr. Ryman transferred her to the arbitration department where a person identified as a Mr. Moody answered the phone.

40.     Mr. Moody repeated the information that Mr. Ryman had told the Plaintiff and asked her how much could she pay today. Ms. DEOLMOS told Mr. Moody that she did not have the financial means to make a payment arrangement and told him that she had never received any letter or other correspondence about this alleged debt or company.

41.     Mr. Moody told Ms. DEOLMOS that he could not provide validation to her unless she committed to payment arrangements today. Mr. Moody continued that if she did not make those arrangements today, that she would be served with legal process to appear in court.

42.     Ms. DEOLMOS asked Mr. Moody what her options were. He said that the total balance due on this debt was $2,931.41 but that he would accept $300.66 for eight (8) months for a total of $2,400.00, or $416.00 for six (6) months for a total of $2,496.00, or she could use her father's credit card and make a one (1) time payment of $1,800.00.

43. Mr. Moody continually repeated that Ms. DEOLMOS needed to make payment arrangements today or else she would be served legal papers, have her wages garnished and, that they would contact her employer's Human Resources Department about her financial debt.

44. Because Ms. DEOLMOS was making this phone call on her lunch hour, she needed to get back to work and asked Mr. Moody again for his name, his direct phone number and asked him what was the latest that she could respond to him. Mr. Moody kept repeating nothing more than , "today". Finally, Mr. Moody told Ms. DEOLMOS that he needed to hear from her with her decision by 5 p.m. eastern time today. The call ended.

45. Ms. DEOLMOS was emotionally distraught and confused by this call and conversation with Mr. Ryman and Mr. Moody. Because she was emotionally distraught by these conversations, her work suffered due to her dwelling on the possibility of being summoned into court and being arrested accompanied with her concerns of what would happen to her two (2) young children if she was arrested.

46. On or about May 22, 2012, approximately 4:36 p.m., Ms. DEOLMOS received a voice message from Mr. Moody asking her to call him back as soon as possible. This message stated,

> This is for Melissa Deolmos. Give Mr. Moody a call back at 315-410-2065. You said you would give us a call when you got off. Give me a call. 315-410-2065.

47. Upon calling him back, Ms. DELOMOS' cell phone dropped the call. Mr. Moody immediately called her back accusing her of hanging up on him. Ms. DEOLMOS

disputed this statement and asked him who he worked for. After being asked, Mr. Moody told her that he worked for Robert James & Associates. She asked him for a case number and he told her that it was "A1401479".

48.     Mr. Moody asked Ms. DEOLMOS how she was going to pay on this account. He then asked her to make payments of one-hundred dollars ($100.00) a month to start with. She told him that she is not able to make that payment. Mr. Moody responded, "The company doesn't want to hear that ma'am."

49.     Ms. DEOLMOS told Mr. Moody that she cannot make financial arrangements to pay this today and asked him what her options were. Mr. Moody told her that she has no options and that she will be taken to court.

50.     Ms. DEOLMOS asked Mr. Moody again for validation of the debt and he again denied to send it to her. She asked him if he would send it to her via an email and he again denied to send it unless she committed to a payment plan today. Ms. DEOLMOS asked him again to send her a validation letter and Mr. Moody placed her on hold. After placing her on hold for approximately three (3) minutes, Ms. DEOLMOS hung up. Ms. DEOLMOS was emotionally distraught about this situation and the way she was being treated by the Defendant.

51.     On or about May 23, 2012, while at work, Ms. DEOLMOS was called by the front desk receptionist to meet with a man. Not knowing who this man was and not getting unannounced visitors, Ms. DEOLMOS immediately became terrified believing that she was going to be arrested or served with legal papers. It turned out to be a patient with an

insurance question.  Regardless, Ms. DEOLMOS was terrified about even the thought or possibility of going to jail or being served with legal papers.

52.   On or about May 30, 2012, at approximately 11:03 a.m., and again at approximately 11:34 a.m., Ms. DEOLMOS received two new calls from 716-831-2565.  Neither call left a message.

53.   Anytime a call came in from agents of RJA, it was not identified as coming from RJA but rather was an "unknown name".

54.   Ms. DEOLMOS called back the 716-831-2565 number.  An unidentified man answered "Robert James" and asked her to confirm her phone number and name.  He continued stating that he was calling to get her "final statement" before the Defendant submitted paperwork in order to have her served today to appear in County Court.  He asked her if she was able to settle out of court without the involvement of lawyers.  Ms. DEOLMOS again stated that she did not have the means to make a settlement.  This unidentified agent of the Defendant then told her that she would be served with legal papers.  He read off her home address, which was correct but she did not confirm this with him.  He also told Ms. DEOLMOS that he had her work address and asked her whether it would be better to be served at home or at work.  She said use whatever address you want.  This unidentified agent of RJA said that the paperwork would be signed by Friday and that she would be served at work and that the call was being recorded and that this call would be used against Ms. DEOLMOS in court.  Ms. DEOLMOS knew the voice of Mr. Ryman and Mr. Moody and this person was neither of them and never gave his name.  Ms. DEOLMOS

never was informed that this call was being recorded nor did she ever give RJA consent to record this call.

55.     Ms. DEOLMOS was so emotionally distraught over the debt collection scare tactics used by the Defendant that she expressed her emotional frustration on a fitness website to which she belongs which tracked her exercise, meals and how she felt. One of the reasons that Ms. DEOLMOS used this website was in order to help her loose weight. Because of the emotional stress caused by the Defendant through its agents, Ms. DEOLMOS is stress eating, depressed and generally stressed about these phone calls demanding payment under threat of arrest and being served legal papers demanding her appearance in court.

56.     As of the date of service of this Complaint, which is more than five (5) days after the initial communication, Ms. DEOLMOS has not received any validation notice from the defendant as is required under 15 U.S.C. § 1692g(a).

**COUNT I: VIOLATION OF 15 U.S.C. 1692c(b)**
**CONTACTING A THIRD PARTY WITHOUT CONSENT FOR PURPOSES OTHER**
**THAN OBTAINING LOCATION INFORMATION.**

57.     Plaintiff reincorporates and re-alleges paragraphs one (1) through fifty-six (56) as if fully stated herein.

58.     15 U.S.C. § 1692c(b) states,

> Except as provided in section 1692b of this title, without the prior consent of the consumer given directly to the debt collector, or the express permission of a court of competent jurisdiction, or as reasonably necessary to effectuate a postjudgment judicial remedy, **a debt collector may not communicate, in connection with the collection of any debt, with any person other than the consumer,** his attorney, a consumer reporting agency if otherwise

permitted by law, the creditor, the attorney of the creditor, or the attorney of the debt collector. (Emphasis added).

59.    Defendant's first known attempt to collect on this debt was a telephone communication to the Plaintiff's father, first asking for the Plaintiff's mother, and upon finding out that the mother was not available, telling the father that his daughter would be going to jail for writing a bad check.

60.    The Defendant advised the father that this matter concerned a collection matter and a bad check which his daughter wrote.

61.    This call, without prior consent from the Plaintiff and not meeting any of the other exceptions of 15 U.S.C. § 1692c (b), was done under the guise of requesting location information however, the real purpose of the call was to put pressure on the parents knowing that a caring parent would pressure their child into paying or making payment arrangements on this debt in an expeditious manner. This approach is designed to have the parent become part of the collection effort.

62.    Defendant violated 15 U.S.C. § 1692c(b) by communicating with a person other than the consumer and without permission or meeting any other exception of this section, in the collection of a debt thereby causing injury to the Plaintiff.

**Wherefore**, Ms. DEOLMOS requests that this Honorable Court award her damages pursuant to 15 U.S.C. § 1692k to include: statutory damages of one-thousand dollars ($1,000.00), actual damages, including mental and emotional distress damages, costs and reasonable attorney's fees pursuant to the FDCPA and any other relief that the Court deems just and proper.

## COUNT II: VIOLATION OF 15 U.S.C. 1692d(6), HARASSMENT OR ABUSE

63.    Plaintiff reincorporates and re-alleges paragraphs one (1) through fifty-six (56) as if fully

stated herein.

64.    15 U.S.C. 1692d states in part,

> A debt collector may not engage in any conduct the natural
> consequences of which is to harass, oppress, or abuse any person
> in connection with the collection of a debt. Without limiting the
> general application of the foregoing, the following conduct is a
> violation of this section . . . **(6)** Except as provided in section
> 1692b of this title, the placement of telephone calls without
> meaningful disclosure of the caller's identity.

65.    15 U.S.C. § 1692d (6) applies to voice mails left on telephone system voice mails such

as those left on Ms. DEOLMOS' cell phone.

66.    15 U.S.C. § 1692d (6) mandates that a debt collector must provide meaningful disclosure

of the callers identity.   Meaningful disclosure includes the caller's name, the name of the

debt collection company and that nature of the debt collector's business.

67.    While Mr. Ryman and Mr. Moody both left their names in the voice mail messages, they

neither advised the Plaintiff of the name of the company they were working for or the

nature of their business in these messages which is in violation of this statute.

68.    Neither Mr. Ryman nor Mr. Moody told Ms. DEOLMOS the name of the company they

were working for during the initial communication with them.   It was not until Ms.

DEOLMOS talked with Mr. Moody on or about May 22, 2012, approximately 4:36 p.m.,

when she asked him who he worked for, that the name of the company was disclosed for

the first time.

**Wherefore,** Ms. DEOLMOS requests that this Honorable Court award her damages pursuant to 15 U.S.C. § 1692k to include: statutory damages of one-thousand dollars ($1,000.00), actual damages, including mental and emotional distress damages, costs and reasonable attorney's fees pursuant to the FDCPA and any other relief that the Court deems just and proper.

## COUNT III: VIOLATION OF 15 U.S.C. 1692e (2)(A)

69.    Plaintiff reincorporates and re-alleges paragraphs one (1) through fifty-six (56) as if fully stated herein.

70.    15 U.S.C. § 1692e states in part,

> A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section: . . . **(2)** The false representation of– **(A)** the character, amount, or legal status of any debt . .   (15 U.S.C. § 1692e (2)(A)).

71.    The Defendant used false, deceptive and misleading representations in the attempted collection of this debt when its agents told both Ms. DEOLMOS and her father that she would be going to jail for writing a bad check when Ms. DEOLMOS was not aware of writing any dishonored check. Defendant also knew that if a check had been dishonored, that it could be dishonored for a variety of reasons, including non-criminal reasons. Defendant used the bad check, going to jail allegation to misrepresent the legal status of the debt and coerce payment.

72.    The Defendant used false, deceptive and misleading representations in the attempted collection of this debt when its agents told Ms. DEOLMOS that legal papers had been

filed against her and indicated that she would be receiving them shortly when it knew no such legal papers had been filed.

73.   The Defendant used false, deceptive and misleading representations in the attempted collection of this debt when its agents told Ms. DEOLMOS that her wages would be garnished when the Defendant knew that it had not taken any legal action against the Plaintiff and therefore falsely, deceptively and misleadingly misrepresented the legal status of this debt in violation of the FDCPA.

74.   According to the Brevard County Clerk of Court website, which includes both civil and criminal causes of action, Defendant has never filed any complaints within this County for any reason under its name since January 1, 2000, and therefore falsely, deceptively and misleadingly misrepresented the legal status of this debt in violation of the FDCPA.

**Wherefore,** Ms. DEOLMOS requests that this Honorable Court award her damages pursuant to 15 U.S.C. § 1692k to include: statutory damages of one-thousand dollars ($1,000.00), actual damages, including mental and emotional distress damages, costs and reasonable attorney's fees pursuant to the FDCPA and any other relief that the Court deems just and proper.

## COUNT IV: VIOLATION OF 15 U.S.C. 1692e (4)

75.   Plaintiff reincorporates and re-alleges paragraphs one (1) through fifty-six (56) as if fully stated herein.

76.   15 U.S.C. § 1692e states in part,

A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing,

16

the following conduct is a violation of this section: . . . **(4)** The representation or implication that nonpayment of any debt will result in the arrest or imprisonment of any person or the seizure, garnishment, attachment, or sale of any property or wages of any person unless such action is lawful and the debt collector or creditor intends to take such action. (15 U.S.C. § 1692e (4)).

77.   The Defendant used false, deceptive and misleading representations in the attempted collection of this debt when its agents told both Ms. DEOLMOS and her father that she would be going to jail for writing a bad check knowing that it had no right to make such a claim because even if true, the Defendant never intended to take that action which is in violation of the FDCPA.

78.   The Defendant used false, deceptive and misleading representations in the attempted collection of this debt when its agents told Ms. DEOLMOS that her wages would be garnished when Defendant knew that it had not filed any legal papers against the Plaintiff, knew it was not going to file such papers against her and had no legal right to garnish her wages and never intended to take this action which is in violation of the FDCPA.

79.   According to the Brevard County Clerk of Court website, which includes both civil and criminal causes of action and garnishments, Defendant has never filed any complaints within this County for any reason under its name since January 1, 2000, and therefore falsely, deceptively and misleadingly misrepresented that the Plaintiff would go to jail, and have her wages garnished in violation of the FDCPA.

**Wherefore,** Ms. DEOLMOS requests that this Honorable Court award her damages pursuant to 15 U.S.C. § 1692k to include: statutory damages of one-thousand dollars ($1,000.00),

actual damages, including mental and emotional distress damages, costs and reasonable attorney's

fees pursuant to the FDCPA and any other relief that the Court deems just and proper.

## COUNT V: VIOLATION OF 15 U.S.C. 1692e (5)

80.     Plaintiff reincorporates and re-alleges paragraphs one (1) through fifty-six (56) as if fully

stated herein.

81.     15 U.S.C. § 1692e states in part,

> A debt collector may not use any false, deceptive, or misleading
> representation or means in connection with the collection of any
> debt.  Without limiting the general application of the foregoing,
> the following conduct is a violation of this section: . . . (5) The
> threat to take any action that cannot legally be taken or that is not
> intended to be taken.  (15 U.S.C. § 1692e (5)).

82.     The Defendant used false, deceptive and misleading representations in the attempted

collection of this debt when its agents told both Ms. DEOLMOS and her father that she

would be going to jail for writing a bad check knowing they the Defendant had no

intention of taking this action but rather used this as a strategy to exert pressure upon the

Plaintiff to force payment.

83.     The Defendant used false, deceptive and misleading representations in the attempted

collection of this debt when its agents told Ms. DEOLMOS that legal papers had been

filed against her and indicated that she would be receiving them shortly when it knew no

such legal papers had been filed and had no intention of taking this action.

84.     The Defendant used false, deceptive and misleading representations in the attempted

collection of this debt when its agents told Ms. DEOLMOS that her wages would be

18

garnished when Defendant knew that it had not filed any legal papers and had no intention of filing any legal papers against the Plaintiff, therefore not having any legal right to garnish wages. The Defendant knowing that it had no intention of taking this action used this as a strategy to exert pressure upon the Plaintiff to force payment.

85. According to the Brevard County Clerk of Court website, which includes both civil and criminal causes of action and garnishments, Defendant has never filed any complaints within this County for any reason under its name since January 1, 2000, and therefore falsely, deceptively and misleadingly misrepresented that the Plaintiff would go to jail and have her wages garnished in violation of the FDCPA.

**Wherefore**, Ms. DEOLMOS requests that this Honorable Court award her damages pursuant to 15 U.S.C. § 1692k to include: statutory damages of one-thousand dollars ($1,000.00), actual damages, including mental and emotional distress damages, costs and reasonable attorney's fees pursuant to the FDCPA and any other relief that the Court deems just and proper.

## COUNT VI: VIOLATION OF 15 U.S.C. 1692e (7)

86. Plaintiff reincorporates and re-alleges paragraphs one (1) through fifty-six (56) as if fully stated herein.

87. 15 U.S.C. § 1692e states in part,

> A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section: . . . (7) The false representation or implication that the consumer committed any crime or other conduct in order to disgrace the consumer. (15 U.S.C. § 1692e (7)).

19

88.   The Defendant used false, deceptive and misleading representations in the attempted collection of this debt when its agents told both Ms. DEOLMOS and her father that she would be going to jail for writing a bad check implicating that the Plaintiff committed a crime.   Defendant used this as a strategy to exert pressure upon the Plaintiff to force payment.

89.   According to the Brevard County Clerk of Court website, which includes both civil and criminal causes of action and garnishments, Defendant has never filed any complaints within this County for any reason under its name since January 1, 2000, and therefore falsely, deceptively and misleadingly misrepresented that the Plaintiff would go to jail and have her wages garnished in violation of the FDCPA.

**Wherefore**, Ms. DEOLMOS requests that this Honorable Court award her damages pursuant to 15 U.S.C. § 1692k to include: statutory damages of one-thousand dollars ($1,000.00), actual damages, including mental and emotional distress damages, costs and reasonable attorney's fees pursuant to the FDCPA and any other relief that the Court deems just and proper.

## COUNT VII: VIOLATION OF 15 U.S.C. 1692e (10)

90.   Plaintiff reincorporates and re-alleges paragraphs one (1) through fifty-six (56) as if fully stated herein.

91.   15 U.S.C. § 1692e states in part,

> A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt.   Without limiting the general application of the foregoing, the following conduct is a violation of this section: . . . **(10)** The use of any false representation or deceptive means to collect or

20

> attempt to collect any debt or to obtain information concerning a
> consumer.  (15 U.S.C. § 1692e (10)).

92.    The Defendant used false, deceptive and misleading representations in the attempted

collection of this debt when its agents told both Ms. DEOLMOS and her father that she

would be going to jail for writing a bad check implicating that the Plaintiff committed a

crime even though it knew that other legitimate reasons existed that can cause a check to

be dishonored.  Even though the Plaintiff had not written a bad check, Defendant used this

as a strategy in violation of the FDCPA to exert pressure upon her to force payment.

93.    The Defendant used false, deceptive and misleading representations in the attempted

collection of this debt when its agents told Ms. DEOLMOS that legal papers had been

filed against her and indicated that she would be receiving them shortly when it knew no

such legal papers had been filed.

94.    The Defendant used false, deceptive and misleading representations in the attempted

collection of this debt when its agents told Ms. DEOLMOS that her wages would be

garnished when Defendant knew that it had not filed any legal papers and had no legal

right to file legal papers against the Plaintiff.  The Defendant knowing that it had no

intention of taking this action used this as a strategy to exert pressure upon the Plaintiff

to force payment in violation of the FDCPA.

95.    The Defendant used false, deceptive and misleading representations in the attempted

collection of this debt when its agents told Ms. DEOLMOS that they were "Arbitration

Managers".  When Ms. DEOLMOS heard the term "Arbitration Manager", she believed

that both Mr. Ryman and Mr. Moody were empowered with some sort of legal ability to collect the alleged debt.

**Wherefore,** Ms. DEOLMOS requests that this Honorable Court award her damages pursuant to 15 U.S.C. § 1692k to include: statutory damages of one-thousand dollars ($1,000.00), actual damages, including mental and emotional distress damages, costs and reasonable attorney's fees pursuant to the FDCPA and any other relief that the Court deems just and proper.

## COUNT VIII: VIOLATION OF 15 U.S.C. 1692e (11)

96.     Plaintiff reincorporates and re-alleges paragraphs one (1) through fifty-six (56) as if fully stated herein.

97.     15 U.S.C. § 1692e states in part,

> A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section: . . . **(11)** The failure to disclose. . .if the initial communication with the consumer is oral, in that initial oral communication, that the debt collector is attempting to collect a debt and that any information obtained will be used for that purpose, and the failure to disclose in subsequent communications that the communication is from a debt collector except that this paragraph shall not apply to a formal pleading made in connection with a legal action. (15 U.S.C. § 1692e (11)).

98.     During the first initial oral communication between Mr. Ryman and Ms. DEOLMOS, Mr. Ryman, as agent for the Defendant and in violation of the FDCPA, failed to tell the Plaintiff that he was attempting to collect a debt and that any information he obtained would be used for that purpose.

22

99.    "The term 'communication' means the conveying of information regarding a debt directly

or indirectly to any person through any medium." 15 U.S.C. § 1692a (2).

**Wherefore,** Ms. DEOLMOS requests that this Honorable Court award her damages

pursuant to 15 U.S.C. § 1692k to include: statutory damages of one-thousand dollars ($1,000.00),

actual damages, including mental and emotional distress damages, costs and reasonable attorney's

fees pursuant to the FDCPA and any other relief that the Court deems just and proper.

## COUNT IX: VIOLATION OF 15 U.S.C. 1692g(a)

100.    Plaintiff reincorporates and re-alleges paragraphs one (1) through fifty-six (56) as if fully

stated herein.

101.    15 U.S.C. § 1692g states in part,

> Within five days after the initial communication with a consumer
> in connection with the collection of any debt, a debt collector
> shall, unless the following information is contained in the initial
> communication or the consumer has paid the debt, send the
> consumer a written notice containing– **(1)** the amount of the debt;
> **(2)** the name of the creditor to whom the debt is owed; **(3)** a
> statement that unless the consumer, within thirty days after receipt
> of the notice, disputes the validity of the debt, or any portion
> thereof, the debt will be assumed to be valid by the debt collector;
> **(4)** a statement that if the consumer notifies the debt collector in
> writing within the thirty-day period that the debt, or any portion
> thereof, is disputed, the debt collector will obtain verification of
> the debt or a copy of a judgment against the consumer and a copy
> of such verification or judgment will be mailed to the consumer by
> the debt collector; and **(5)** a statement that, upon the consumer's
> written request within the thirty=day period, the debt collector will
> provide the consumer with the name and address of the original
> creditor, if different from the current creditor. (15 U.S.C. § 1692g
> (a)).

102.    "The term 'communication' means the conveying of information regarding a debt directly

23

or indirectly to any person through any medium." 15 U.S.C. § 1692a (2).

103.   On or about May 22, 2012, at approximately 11:03 a.m., Mr. Ryman called the Plaintiff

for the first time and in his initial communication to her left on her voice mail stated,

>   Uh, this message is for Melissa Deolmos, this is Michael Ryman.
>   I received your voice mail. I need you to contact me back as soon
>   as you receive this message. My direct line is 315-410-2060.
>   Again, it's 315-410-2060.

104.   The Plaintiff has not paid the alleged debt to the Defendant.

105.   During the first time that Ms. DEOLMOS spoke with Mr. Ryman, while he provided her

with the name of the alleged creditor and the alleged amount owed, did not provide her

with the other requisite information required by 15 U.S.C. § 1692g (a)(3)(4)(5).

106.   Ms. DEOLMOS even voluntarily asked to be provided with validation information in

writing but was told twice by Mr. Moody that unless she made payment arrangements,

that he could not provide such validation to her.

107.   Defendant violated the FDCPA, 15 U.S.C. § 1692g (a)(3)(4)(5), by not providing the

Plaintiff with this information in writing within five days after the initial communication.

**Wherefore,** Ms. DEOLMOS requests that this Honorable Court award her damages

pursuant to 15 U.S.C. § 1692k to include: statutory damages of one-thousand dollars ($1,000.00),

actual damages, including mental and emotional distress damages, costs and reasonable attorney's

fees pursuant to the FDCPA and any other relief that the Court deems just and proper.

## COUNT X: VIOLATION OF FLORIDA STAT. § 559.72 (4)

108.   Plaintiff reincorporates and re-alleges paragraphs one (1) through fifty-six (56) as if fully

stated herein.

109. Florida Stat. § 559.72 states in part,

> In collecting consumer debts, no person shall: . . . (4) Communicate or threaten to communicate with a debtor's employer before obtaining final judgment against the debtor, unless the debtor gives her or his permission in writing to contact her or his employer or acknowledges in writing the existence of the debt after the debt has been placed for collection. However, this does not prohibit a person from telling the debtor that her or his employer will be contacted if a final judgment is obtained. (Fla. Stat. § 559.72(4)).

110. The Defendant threatened to contact Ms. DEOLMOS' employer by threatening to contact her Human Resources Department and communicate the existence of this debt prior to a final judgment.

111. Ms. DEOLMOS never gave the Defendant written permission to contact her employer regarding this debt.

112. The Defendant violated the FCCPA by threatening to tell Ms. DEOLMOS' employer about the existence of this debt prior to obtaining a final judgment and without written permission of the Plaintiff therefore violating this statute and causing injury to the Plaintiff.

**Wherefore**, Ms. DEOLMOS requests that this Honorable Court award her damages pursuant to Fla. Stat. § 559.77 to include: statutory damages of one-thousand dollars ($1,000.00), actual damages, including mental and emotional distress damages, costs and reasonable attorney's fees and any other relief that the Court deems just and proper.

## COUNT XI: VIOLATION OF FLORIDA STAT. § 559.72 (9)

113.   Plaintiff reincorporates and re-alleges paragraphs one (1) through fifty-six (56) as if fully stated herein.

114.   Florida Stat. § 559.72 states in part,

> In collecting consumer debts, no person shall: . . . (9) Claim, attempt, or threaten to enforce a debt when such person knows that the debt is not legitimate, or assert the existence of some other legal right when such person knows that the right does not exist. (Fla. Stat. § 559.72(9)).

115.   Defendant, RJA through its agents, asserted that it had the legal right that did not exist to put Ms. DEOLMOS in jail for writing a bad check.

116.   Ms. DEOLMOS knew nothing about writing a bad check.

117.   Defendant's agents knew that the Defendant did not have the legal right to jail the Plaintiff on the alleged bad check yet asserted this right anyway.

118.   Because the Defendant knowingly asserted a legal right which did not exist, Defendant violated this statute and the Plaintiff was injured.

**Wherefore,** Ms. DEOLMOS  requests that this Honorable Court award her damages pursuant to Fla. Stat. § 559.77 to include: statutory damages of one-thousand dollars ($1,000.00), actual damages, including mental and emotional distress damages, costs and reasonable attorney's fees and any other relief that the Court deems just and proper.

### COUNT XII: VIOLATION OF FLORIDA STAT. § 559.72 (9)

119.   Plaintiff reincorporates and re-alleges paragraphs one (1) through fifty-six (56) as if fully stated herein.

120.   Florida Stat. § 559.72 states in part,

> In collecting consumer debts, no person shall: . . . (9) Claim, attempt, or threaten to enforce a debt when such person knows that the debt is not legitimate, or assert the existence of some other legal right when such person knows that the right does not exist. (Fla. Stat. § 559.72(9).

121.   Defendant, RJA through its agents, asserted that it had the legal right that did not exist to serve Ms. DEOLMOS with a lawsuit when no such lawsuit had been filed within Brevard County, Florida.

122.   Defendant's agents knew that the Defendant did not have the legal right to sue the Plaintiff because no such lawsuit had been filed against her, nor any other party within Brevard County, FL, at the time, yet asserted this right anyway.

123.   Because the Defendant knowingly asserted a legal right which did not exist, Defendant violated this statute and the Plaintiff was injured.

**Wherefore,** Ms. DEOLMOS requests that this Honorable Court award her damages pursuant to Fla. Stat. § 559.77 to include: statutory damages of one-thousand dollars ($1,000.00), actual damages, including mental and emotional distress damages, costs and reasonable attorney's fees and any other relief that the Court deems just and proper.

## COUNT XIII: VIOLATION OF FLORIDA STAT. § 559.72 (9)

124.   Plaintiff reincorporates and re-alleges paragraphs one (1) through fifty-six (56) as if fully stated herein.

125.   Florida Stat. § 559.72 states in part,

> In collecting consumer debts, no person shall: . . . (9) Claim, attempt, or threaten to enforce a debt when such person knows that the debt is not legitimate, or assert the existence of some other

27

legal right when such person knows that the right does not exist.
(Fla. Stat. § 559.72(9).

126.   Defendant, RJA through its agents, asserted that it had the legal right that did not exist to

garnish Ms. DEOLMOS' wages when it had no legal right to do so since it had never filed

any lawsuit against her within Brevard County, Florida.

127.   Defendant's agents knew that the Defendant did not have the legal right to garnish the

Plaintiff's wages because no lawsuit had been filed against her, nor any other party within

Brevard County, FL, at the time, yet asserted this right anyway.

128.   Because the Defendant knowingly asserted a legal right which did not exist, Defendant

violated this statute and the Plaintiff was injured.

**Wherefore**, Ms. DEOLMOS  requests that this Honorable Court award her damages

pursuant to Fla. Stat. § 559.77 to include:  statutory damages of one-thousand dollars ($1,000.00),

actual damages, including mental and emotional distress damages, costs and reasonable attorney's

fees and any other relief that the Court deems just and proper.

Michael G. Howard, Esq.
Fla. Bar Number 0636541
Attorney for Plaintiff, Melissa DeOlmos
Law Office of Michael G. Howard, P.A.
P.O. Box 510547
Melbourne Beach, FL 32951-0547
Telephone: 321-728-4246
Fax: 321-728-4217
E-mail: michaelhowardlaw@gmail.com
Trial Counsel

28

## VERIFICATION OF COMPLAINT

Plaintiff, MELISSA DEOLMOS, states as follows:

1.    I am the Plaintiff in this civil case.

2.    I have read the civil Complaint attached to this Verification of Complaint which was prepared by my attorney.

3.    All of the facts contained within the facts section of this Complaint as they occurred to and pertained to me are to the best of my knowledge, belief, and recollection true.

4.    I am not filing this Complaint for any improper purpose or to harass the Defendant. While I am not an attorney, I have filed this Complaint in good faith believing that the Defendant violated both the Federal Fair Debt Collection Practices Act and the Florida Consumer Protection Practices Act.

MELISSA DEOLMOS

STATE OF FLORIDA)
COUNTY OF BREVARD)

The foregoing was acknowledged before me this ___ day of _____, 2012, by Melissa DeOlmos, who is (circle or fill in as appropriate), personally known to me or who has produced a Florida Driver's License as identification, and who acknowledged that the facts as they occurred to her are true and correct to the best of his or her knowledge, information and belief, and subscribed his or her name hereto in certification and verification thereof.

ELLA AUSTIN
Comm# DD0797736
Expires 7/21/2012
Florida Notary Assn., Inc

NOTARY SIGNATURE
Print Name: ELLA AUSTIN
Notary Public, State of FLORIDA
Notary Comm. No.: DD0797736
My Commission Expires: July 21, 2012

29